# In the United States Court of Federal Claims

No. 09-185 C

(Filed February 9, 2010)

```
RED RIVER HOLDINGS, LLC,        )
            Plaintiff,          )
                                )
      v.                        )
                                )
THE UNITED STATES,              )
            Defendant,          )
                                )
                                )
SEALIFT, INC.,                  )
            Intervenor-defendant.)
```

## OPINION

In the post-award bid protest that preceded the instant motion for injunction pending appeal, the Military Sealift Command ("MSC") solicited bids for a time charter party contract[1] to warehouse military supplies at prepositioned locations at sea. Proposals were submitted by Red River Holdings, LLC ("Red River") and Sealift, Inc. ("Sealift"). Following evaluation, a contract, consisting of an initial period of approximately 3.5 months, with four one-year options and a final option period estimated at 7.5 months, was awarded to Sealift.

Red River filed this post-award bid protest on March 26, 2009. Sealift did not intervene. On March 27, 2009, the court *sua sponte* questioned whether the maritime nature of the contract might preclude subject matter jurisdiction and requested Red River and the government address that matter before proceeding to the merits of the bid protest. (Ord. [6].) Red River and the government filed briefs on April 7, 2009, both insisting that as the controversy centered on the award process, not the contract or its performance, subject matter jurisdiction in this forum was well-grounded. On

---

[1] A charter party is a contract by which an entire ship is let for specified purposes for a specified term. A time charter is a service contract in which the contractor is responsible for engaging the crew and maintaining and navigating the vessel for a certain period of time.

April 8, 2009, the court by order agreed and concluded the underlying controversy over the solicitation, evaluation and award was a bid protest, not a maritime dispute; accordingly, the court possessed subject matter jurisdiction. Sealift was aware of the proceedings, but did not then make an appearance, contest jurisdiction or seek reconsideration of the court's April 8, 2009 Order.

The July 10, 2009 ruling on cross-motions for judgment on the administrative record, details the rationale for the court's conclusion on subject matter jurisdiction as follows:

> [T]he protest matters asserted herein are statutorily-based and within the exclusive jurisdiction of the Court of Federal Claims, not maritime contract claims. Any maritime contractual underpinnings are incidental and not severable from the protest aspects asserted.
>
> [Moreover], any contractual aspects of this matter, whether express or implied, are not maritime in nature or purpose, and are, at the most "preliminary" to a maritime contract, in that Red River's objections concern the process of determining which competitor gets the contract award. *See Coastal Corp.* [*v. United States*], 713 F.2d [728,] 730 [(Fed. Cir. 1983)] ("The implied contract to give bids 'fair and honest consideration' that the appellants assert the government breached, was preliminary and ancillary to any contract, express or implied, the government might enter into for goods or services. It was not itself such a contract, however.") (citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203, 203 Ct. Cl. 566 (1974)).
>
> Thus, the bid protest here [deals with matters which are] preliminary to a possible contract and lacks a maritime nature or purpose. See *Harley Mullion & Co. v. Caverton Marine Ltd.*, No. 08-cv-5435(BSJ), 2008 WL 4905460 (S.D.N.Y. 2008) (dismissing for lack of admiralty jurisdiction claim for brokerage commissions related to two charters). *In Maritima Petroleo E. Engenharia LTDA v. Ocean Rig 1 AS*, 78 F. Supp. 2d 162, 170 (S.D.N.Y. 1999), an agreement to procure contracts for the future use of defendant's offshore drilling rigs was held not to be admiralty. Any maritime contract was dependant upon the successful negotiation of a contract. If no contract was finalized, then there would be no obligation to furnish the rigs. *See also*

*Kreatsoulas v. Freights of the Levant Pride*, 838 F. Supp. 147 (S.D.N.Y. 1993) (no admiralty jurisdiction, as purpose of assignment contract at issue was to provide collateral for a loan; nothing about the assignment was maritime in nature); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129 (2d Cir. 1998) (brokerage contract to procure charter party not maritime contract); *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599 (2d Cir. 1991) (agreement to contribute to settlement of marine cargo claim not maritime contract); *Planned Premium Servs. of La., Inc. v. Int'l Ins. Agents, Inc.*, 928 F.2d 164 (5th Cir. 1991) (contract to finance marine insurance not maritime contract); *Exim Grain Trade, B.V. v. J.K. Int'l Pty Ltd.*, No. 08-cv-6989(WHP), 2008 WL 5191058 (S.D.N.Y. 2008) (contract for sale of wheat to be delivered to vessel not maritime contract); *Carter-Green-Redd, Inc. v. USS Cabot/Dedalo Museum Found.*, 756 F.Supp. 276 (E.D.La. 1991) (option to lease vessel not maritime contract).

>    Accordingly, it is concluded that, upon further consideration of the matter, the prior *Asta* [*Engineering, Inc. v. United States*, 46 Fed. Cl. 674 (2000)] decision reached the wrong result based upon the incorrect view that a bid protest on a maritime contract award had the same maritime character as the ensuing contract. Viewed correctly as a matter separate and distinct from the ensuing contract, the bid protest does not assume a maritime character and the exclusive jurisdiction the Court of Federal Claims attained in 2001 [with the enactment of the Administrative Dispute Resolution Act ("ADRA"), 28 U.S.C. § 1491(b)] correctly takes hold.

*Red River Holdings, LLC v. United States*, 87 Fed. Cl. 768, 797 (2009).

On the merits, the court determined that the award to Sealift was arbitrary and capricious because its proposal was not evaluated on, and did not conform to, all of the material technical requirements of the solicitation. However, citing national security concerns, the award was not cancelled in its entirety. Instead, the award to Sealift was limited to the initial performance period and the first one-year option. This national security concession was intended to give the government sufficient time to take corrective action without any gaps in its prepositioned vessel program. Red

River was awarded its bid preparation costs. The parties were ordered to confer towards reaching agreement and to file a status report within sixty days. *Id*. at 798.

On October 2, 2009, Sealift filed a Motion to Intervene [44] "to seek appellate review of the jurisdiction of this Court as applied to bid protests related to admiralty and maritime contracts." On October 5, 2009, Red River and the government filed their Status Report [45], stipulating to bid preparation costs of $24,198.49. Red River filed its Opposition to Sealift's Motion to Intervene on October 6, 2009 [46] and Sealift filed its Reply on October 19, 2009 [47]. The government did not take a position on Sealift's Motion. By Order of October 22, 2009 [48], the court granted Sealift's limited motion to intervene to contest subject matter jurisdiction, noting that the circumstances present were similar to those in *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). *Red River Holdings, LLC v. United States*, No. 09-185, 2009 WL 3423838, at *2-3 (Fed. Cl. Oct. 22, 2009). Judgment was entered on October 23, 2009 [50]. On October 27, 2009, Sealift filed a Notice of Appeal [51]. *Red River Holdings v. United States*, *appeal docketed*, No. 2010-5019 (Fed. Cir. Oct. 29, 2009). The government did not seek appellate review.

After noting an appeal, Sealift filed a Motion for Modification of Injunction Pending Appeal [54] in the Court of Federal Claims on December 22, 2009. Red River filed its Opposition on January 7, 2010 [55]. The government filed a Response on January 8, 2010 [56] and Sealift a Reply on January 15, 2010 [57].

Sealift advocates modifying the restriction of the award to the initial performance period and the first one-year option, by extending the award to add a second option period. The government's response takes no position on Sealift's motion, but adds "that in the event that Sealift's motion is granted, the [MSC] respectfully reserves the right not to exercise the second option period in the contract." (Def.'s Resp. [56] 1.)

Modification of the court's injunction prior to appellate resolution of the subject matter jurisdiction issues asserted is necessary Sealift contends, "before the Government makes an irrevocable decision to displace the Sealift vessel under the current charter with all its attendant expense to the Government and disruption to Sealift." (Sealift's Mot. [54-1] 1.) Sealift represents that MSC is resoliciting the contract, with proposals due in January, and award scheduled for early April 2010. Sealift's Federal Circuit brief was filed on December 28, 2009. With possible oral

argument before the Federal Circuit in April of 2010 at the earliest, Sealift predicts the admiralty and jurisdictional issues presented in its appeal will not be resolved before the resolicitated contract will be awarded.[2]

**Jurisdiction and Standard of Review**

"[I]t is well established that once final judgment is entered and a timely notice of appeal has been filed, the trial court loses jurisdiction over the case except to act in aid of the appeal or to correct clerical errors." *JWK Int'l Corp. v. United States*, 49 Fed. Cl. 364, 366 (2001) (citations omitted). Rule 62(c) of the Rules of the United States Court of Federal Claims ("RCFC"),[3] cited by Sealift, enumerates circumstances of retained jurisdiction including modification of an injunction. "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."[4]

Despite the pendency of the appeal, under RCFC 62(c), the court retains jurisdiction to modify, enjoin or stay its judgment until the Federal Circuit issues its mandate. *See e.g.*, *Rakovich v. Wade*, 834 F.2d 673, 673-74 (7th Cir.1987) (determining that "district court retains the power throughout the pendency of the appeal to simply preserve the status quo by granting a stay of its judgment"); *see also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2908 at 529 (2d ed. 1995) ("[a]lthough subdivisions (c) and (g) of . . . [FRCP] 62 are read together, and the power to act with regard to an injunction pending an appeal exists in both the trial and appellate courts, applications for action of this kind 'ordinarily' must be made in the district court").

---

[2]    Presumably the timing Sealift seeks would provide MSC with a second option year decision before it awards a new contract, to avoid overlapping contracts.

[3]    RCFC 62(c) is patterned upon Rule 62(c) of the Federal Rules of Civil Procedure ("FRCP"); therefore, cases construing FRCP 62(c) provide guidance.

[4]    The Court of Federal Claims November 3, 2008 adoption of changes in rule structure and word usage introduced with the restyling of the Federal Rules of Civil Procedure on December 1, 2007, included Rule 62(c). There were no substantive changes in the cited rule and prior precedent applies.

A court's stay or modification of its own injunction is "an extraordinary remedy." *Axiom Res. Mgmt., Inc. v. United States*, 82 Fed. Cl. 522, 524 (2008) (quoting *Golden Eagle Refining Co. v. United States*, 4 Cl. Ct. 622, 624 (1984)). "For this reason, 'a stay pending appeal requires more than base suppositions of disapproval from a party dissatisfied with the holding of a judicial tribunal.'" *Id.* (quoting *Minor Metals v. United States*, 38 Fed. Cl. 379, 381 (1997)). The standards for enjoining an injunction pending appeal, for which Rule 8(a) of the Federal Rules of Appellate Procedure ("FRAP")[5] provides guidance, are high. The court considers the likelihood that the movant will prevail on the merits of the appeal and the relative harm and equities to the movant, other parties and the public. *JWK Int'l Corp. v. United States*, 49 Fed. Cl. 364, 366 (2001) (citing *Minor Metals*, 38 Fed. Cl. at 381; *Golden Eagle Refining Co.* 4 Cl. Ct. at 623 and *Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed. Cir. 1990)). The formula is not rigid and the factors need not be equally weighted. *Standard Havens*, 897 F.2d at 512-13. "[I]f the harm factors weigh heavily in [the movant's] favor, [the movant] only needs to demonstrate a substantial case on the merits [of his appeal]." *JWK Int'l*, 49 Fed. Cl. at 366 (quoting *Standard Havens*, 897 F.2d at 513). Thus, with some flexibility, this court "assesses [Sealift's] chances for success on appeal and weighs the equities as they affect the parties and the public." *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Jicarilla Apache Nation v. United States*, __ Fed. Cl. __, 2010 WL 391514, at *2 (Feb. 1, 2010).

Sealift is well aware of the hurdle it must overcome. (Sealift's Mot. [54-1] at 4 ("To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits, or failing that, demonstrate a substantial case on the merits provided that the harm factors militate in its favor.") (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987).)

---

[5] FRAP 8(a), cited by Sealift, provides for a stay or injunction pending appeal:
(a) Motion for Stay.
    (1) Initial Motion in the District Court. A party must ordinarily move first in the district court for the following relief:
        (A) a stay of the judgment or order of a district court pending appeal;
        (B) approval of a supersedeas bond; or
        (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

1. **<u>Likelihood of Success on the Merits</u>**

Sealift must establish either a strong chance it will prevail on appeal or, at minimum, a substantial chance it will prevail, depending on the level of harm if the status quo is maintained. In this regard Sealift contends the court erred in concluding the bid protest was not fundamentally a maritime matter over which jurisdiction was lacking. According to Sealift, once MSC awarded the contract, the dispute over that award became maritime; because at that time, the contract was one to provide a ship for oceanic transportation of military supplies, a quintessential maritime matter. One of the disconnects between the solicitation and the subsequent evaluation cited by the court in concluding the award was arbitrary and capricious was Sealift's failure to detail how its vessel would meet the Solicitation's technical specifications for storage and transportation of the military equipment specified – vessel suitability, a traditional admiralty matter.

Sealift also asserts that admiralty contracts do not contain a separate implied duty of fairness in evaluating bid proposals and the so-called preliminary contract doctrine was abrogated in *Matson Navigation Co. v. United States*, 284 U.S. 352 (S. Ct. 1932).

Red River points out preliminarily that Sealift's objective is not simply to modify the court's injunction, but rather to permanently change and/or partially revise the court's judgment from limiting the award to one option year to an award with two option years. That point aside, however, Red River points to the depth of the court's consideration of the jurisdictional issues and asserts that Sealift's arguments do not support reversal or the conclusion that it is likely to succeed on the merits. (Pl.'s Opp'n to Sealift Inc.'s Mot. to Modify the Final J. [55] 4.)

Contract disputes between Sealift and the government would sound in admiralty and fall within the exclusive jurisdiction of the district court, Red River points out. As a disappointed bidder, Red River's redress was a bid protest not a dispute arising under the awarded maritime contract to which it is not a party. Red River distinguishes many of the cases cited by Sealift as addressing a contract to provide the ship which then did not turn out to be as represented, or some other alleged breach of contract. In contrast, Red River filed a protest which was resolved before the vessel was delivered under the award. The limited injunctive and bid

preparation costs awarded find their basis not in the charter party contract but comprise authorized bid protest relief.

In reply, Sealift insists all it seeks is a modification of the injunction. As for the merits, Sealift focuses on the court's concern that the solicitation required details of how the offered vessel complied with a myriad of technical specifications which was not applied in the evaluation of the proposals. This deficiency was, Sealift contends, at its core an admiralty concern of "the suitability of Sealift's vessel as described in its offer measured against the terms of the Solicitation." (Sealift's Reply [57] 2.)

The court did not rule on the suitability of any vessel. The court ruled on MSC's decision-making process and failure to follow the terms of its own solicitation. The court's reasoning on the jurisdictional issue is set forth in detail in its Opinion, and as noted by Red River, the court did not lightly abrogate its prior *Asta* decision. In short, the bid protest presented asserted that MSC acted arbitrarily and capriciously in evaluating proposals. The initial Complaint filed March 26, 2009 [1] was filed as a post-award bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). Count I asserted that Sealift's proposal did not offer a vessel that met the requirements, including detailed explanations of how those requirements would be met, and that MSC's determination that Sealift's vessel met those requirements was arbitrary and capricious, unreasonable, irrational and contrary to law. Violation of the Competition in Contracting Act was also alleged in that MSC improperly relaxed the solicitation requirements for Sealift without offering the same to Red River. The Amended Complaint [18] filed April 15, 2009, and the Second Amended Complaint [39] filed July 14, 2009, make broader, but similar assertions concerning MSC's evaluation of proposals and award to Sealift. Red River invoked bid protest principles and protections, not maritime remedies or redress.

Moreover, the court notes, although not addressed by the parties, this is not the initial ruling Sealift has obtained on this very issue. Sealift, a disappointed bidder in a different procurement of a time charter, brought suit in a district court against MSC asserting that MSC's failure to disqualify the awardee's bid because of asserted material misrepresentations was arbitrary and capricious. The defendant/MSC moved

pursuant to 28 U.S.C. § 1631[6] to transfer the case to the Court of Federal Claims, which it was asserted had, exclusive subject matter jurisdiction over Sealift's bid protest. "[Sealift] argue[d] in response that although the [Court of Federal Claims] has jurisdiction to hear most bid protest cases, jurisdiction over disputes relating to maritime disputes is vested exclusively with the District Courts pursuant to the Suits in Admiralty Act ("SIAA"), 46 U.S.C. Section 30901 *et seq.*" *Sealift, Inc. v. Reilly*, 496 F. Supp. 2d 52, 53 (D.D.C. 2007). Sealift makes the same argument here. "The Court of Federal Claims lacks jurisdiction with regard to other claims against the United States relating to maritime contracts because the Suits in Admiralty Act, 46 U.S.C. §§ 30901 *et seq.*, ("SIAA") displaced Tucker Act jurisdiction." (Sealift's Mot. [54-1] 6). In granting the motion of Rear Admiral Robert Reilly, MSC Commander, to transfer to the Court of Federal Claims, the court in *Sealift v. Reilly* concluded:

> According to the Federal Circuit, "it is clear that Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government contract protest actions." *Emery* [*Worldwide Airlines, Inc. v. United States*], 264 F.3d 1071[, 1079 (Fed. Cir. 2001)].
>
> As plaintiff's complaint expressly challenges the MSC's handling of the bid solicitation process it is clearly a government contract protest action and as such falls within the ambit of the ADRA. Although the defendant argues that jurisdiction to decide maritime disputes is vested exclusively with the District Courts, the ADRA and its sunset provision unequivocally vest sole jurisdiction over bid protests with the COFC.

*Sealift, Inc. v. Reilly*, 496 F. Supp. 2d 52, 53-54 (D.D.C. 2007) (footnotes omitted). Under 28 U.S.C. § 1292(d)(4)(A), the transfer order to the Court of Federal Claims under Section 1631 is directly appealable to the Federal Circuit. The determination that Sealift's protest rested exclusively in the Court of Federal Claims became the "law of the case," binding unless it was "clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

---

[6] Section 1631 provides in relevant part: "whenever a civil action is filed . . . and [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought."

Under issue preclusion, or collateral estoppel, it could be argued that the finding that exclusive jurisdiction for protests over government maritime procurements was final and binding on Sealift. "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). *See* 18 James W. Moore, *Moore's Federal Practice* § 132.01[2] (3d ed. 2008) ("Generally, the doctrine of issue preclusion will prevent a party from relitigating an issue that the party has already litigated and lost."). However, the parties have neither raised nor briefed this issue. Counsel for Sealift did not appeal the *Sealift v. Reilly* transfer ruling pursuant to 28 U.S.C. § 1292(d)(4)(A). Furthermore, following transfer, Sealift's Amended Complaint in the Court of Federal Claims filed on August 30, 2007, specifically and formally represented that jurisdiction in this forum was appropriate. "This court has jurisdiction and venue over this action pursuant to [t]he Tucker Act, codified at 28 U.S.C. § 1491(b) (2000)." Am. Compl., *Sealift, Inc. v. United States*, No. 07-627, at 2 (Fed. Cl. Aug. 30, 2007). That Sealift presumably had at least a modicum of confidence in that statement further weighs against the success of Sealift's current contrary position. *Tr. in Bankr. of N. Am. Rubber Thread Co., Inc. v. United States*, No. 2009-1191, 2010 WL 336818, at *5-9 (Fed. Cir. Feb. 1, 2010) (applying judicial estoppel to prohibit party from taking a position contrary to that in a prior proceeding). Sealift's prior transferred bid protest was resolved on cross-motions for judgment on the administrative record with a Judgment of Dismissal on July 14, 2008. Sealift did not appeal. *Sealift, Inc. v. United States*, 82 Fed. Cl. 527, 534, 549 (2008) (concluding subject matter jurisdiction was present under 28 U.S.C. § 1491(b)(1) and denying Sealift's motion for judgment on the administrative record on the merits of the transferred protest).

Therefore, giving credence to Sealift's prior actions as well as the briefing in the instant case, it is concluded that Sealift has not established either that it has a substantial or strong chance of success on its position that the Court of Federal Claims lacks subject matter jurisdiction over Red River's bid protest.

### 2. **Likelihood that Sealift will Suffer Irreparable Harm**

Another factor to consider is whether Sealift will be irreparably injured if the injunction is not modified.

Sealift states that it "expended millions of dollars to convert the vessel to meet the [Request for Proposal] terms including the erection of the cocoon now in use on the vessel and the time charter amortizes some but not all of that cost." (Sealift's Mot. [54-1] 15.)

Red River responds that any unspecified net economic loss to Sealift could have been avoided. Sealift would suffer loss only if it failed to appropriately factor in the recovery of its costs in submitting its bid for a 3.5 month contract, any option thereafter being at the government's discretion. Moreover, if Sealift is awarded the new contract, it will not suffer any harm.

Concurring with Red River's last point, Sealift may not be injured at all if it is awarded the contract under the resolicitation. Secondly, and as the government reminded the parties and the court, the present injunction applies only to the government's options to extend the contract – a matter within the government's discretion. There is no suggestion that the government's discretion in this regard is constrained. Accordingly, even if the injunction limiting the award had not issued or was modified as requested, any extension of the charter party is at the government's sole option. *See Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1380 (Fed. Cir. 2004) ("[W]here a contract is renewable 'at the option of the Government,' the government is under no obligation to exercise the option." (quoting *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed. Cir.1988)); *TMI Mgmt. Sys., Inc. v. United States*, 78 Fed. Cl. 445, 449 (2007). The court concludes that the irreparable injury factor does not weigh in favor of the injunctive modification relief Sealift requests.

### 3. **Likelihood of Harm to Other Interested Parties**

With regard to the likelihood that substantial harm might be inflicted upon other interested parties if the injunction were modified, Sealift cites the economic costs that would be avoided if the injunction were modified in an unspecified amount as much as $6 million to "terminate the charter at the expiration of the first option year." A "cancellation fee of $3,750,000" is also cited. (Sealift's Mot. [54-1] 15.) Costs to MSC to remove cargo from Sealift's vessel and restowing may cost more than $1 million and the expense to ballast the vessel would also approach $1 million.

The government did not respond to either its liability for, or the estimated costs touted, and the court cannot make a determination whether the time charter allows for the recovery of any of these sums.

Red River claims harm in the modification Sealift seeks in that MSC's pending solicitation is not for a new possible five-year contract, but for the balance of the contract vehicle under which Sealift is currently performing.  Thus, granting the modification would serve to reduce the term of the pending solicitation which could harm a new awardee.  Conversely, if Sealift's Motion is granted and the court's Opinion on jurisdiction is affirmed, Sealift could receive a windfall.

### 4. <u>The Public Interest</u>

Finally, Sealift asserts public interests would be served should the injunction be modified in that MSC would not have to spend some $6 million dollars.  Again, the question of any such an expense is not currently before the court; the government did not respond to that assertion, has not contended that modification is warranted for that (or any other) reason, or expressed any concern about any reprocurement costs.  As the resolicitation process is progressing, any savings in this proposed modification are questionable.  Moreover, the public interest is best served when procurement errors are rectified and the award is made to the correct contractor in accord with the contract solicitations and the award criteria.  MSC's solicitation action in this regard should include as much of the original award term as is feasible.

## <u>CONCLUSION</u>

There are costs which result when government procurement actions are found to be lacking.  If injunctions would be set aside for that reason alone, procurement protections would be eviscerated.  Sealift has not met its burdens to show either a substantial or serious likelihood that it will prevail on the merits of its jurisdictional argument.  Balancing the relevant factors, the scale tips well in favor of denial of Sealift's Motion for Modification of the Injunction Pending Appeal.  The public interest and potential harm to be suffered by the government, and the possible new awardee is at best only slightly offset by possible harm to Sealift.  Moreover, Sealift has clearly failed to establish a likelihood of success on the merits of its appeal.  In this situation in which the court finds "there exists only a modicum of relative harm and little uncertainty of final disposition," it is appropriate to deny Sealift's motion.

*JWK Int'l Corp.*, 49 Fed. Cl. at 371 (citing *Golden Eagle Refining Co.*, 4 Cl. Ct. at 625).

Accordingly, it is **ORDERED** that Sealift's Motion for Modification of Injunction Pending Appeal [54], is **DENIED.**

                                                          s/ James F. Merow  
                                                          James F. Merow  
                                                          Senior Judge